# UNITED STATES FEDERAL DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Hamilton, Jan B. (victim of Hate Crime) & Talkin, Pamela, US Marshall, US Supreme Court
**PLAINTIFFS**
v.

Case: 1:17−cv−01977
Assigned To : Unassigned
Assign. Date : 9/23/2017
Description: Pro Se Gen. Civ.  **(F-DECK)**

Jennifer Lowe, Officers and Trustees of the Supreme Court Historical Society, et.al.; Ralph I. Lancaster, Jr., Gregory P. Joseph, Vincent C. Burke, III, Dorothy Tapper Goldman, Jerome B. Libin, Ms. Thurgood Marshall, Chilton D. Varner, Carter G. Phillips, Philip J. Kessler, Robert E. Juceam, Donald B. Ayer, Robert J. Giuffra Jr., Kenneth S. Geller, Frank B. Gilbert, Robert J. Anello, Charles J. Cooper, Teri P. McClure, James W. Morris III, John M. Nannes, James B. O'Hara, The Honorable Theodore B. Olson, the Honorable Leon B. Polsky, Doc Schneider, The Honorable Seth P. Waxman, Staff:  David T. Pride, Kathleen Shurtleff, Sean Burchett, Clare Cushman, Kelly Harris, Orazio Miceli, Janet Tramonte, Michel Jennings
**DEFENDANTS**

## COMPLAINT OF ASSAULT IN CHAMBERS OF THE US SUPREME COURT BY JENNIFER LOWE, JUNE 5, 2017 REPORTED TO FEDERAL POLICE ALLEGING HATE CRIMES VIOLATION

**The Plaintiff**, Jan B. Hamilton, in this case declares that her 1st and 14th Amendment rights, the 40 U.S.C. § 6135 and the related Hate Crimes Act (2009) passed by both houses of Congress and signed by the President were violated on June 5, 2017 in the Chambers of the US Supreme Court.  This egregious, biased and prejudiced abusive act with intent to inflict bodily harm was aggressively imposed upon an elderly lesbian with homophobia in

1

an act of irrational rage by Jennifer Lowe. The victim, an elderly disabled lesbian alleges that the Historical Society Officers and Board of Trustees of United States Supreme Court unlawfully restricted her ability to exercise her freedom of speech and religion in the Supreme Court Chambers 42nd Annual Lecture of the Historical Society of the US Supreme Court. She alleges that this is in violation of *18 USC 249, the Religious Freedom Restoration Act ("RFRA")* in addition to the 1st Amendment of the United States in the absence of protection by the US Federal Police who she called to aid her with equal protection and due process of the 14th Amendment, *Romer v Evans (1996)*. This petition is filed in keeping with her right to air grievances, 1st Amendment US Constitution.

## JURISDICTION

Plaintiff, Jan B. Hamilton is a resident of the District of Columbia who lives at 110 D. St. SE, #505, Washington, DC 20003. This copy is filed with Pamela Talkin, the US Marshall who works at the US Supreme Court at 1 First St. NE, Washington, DC 20543. Defendants are Jennifer Lowe and her employers, the Officers and Trustees of the Supreme Court Historical Society, located at the Opperman House, 224 East Capitol Street, NE Washington, DC 20003. Chief Justice John Roberts holds jurisdiction over all employees of the Federal Courts Administrative Offices and those

2

working in the US Supreme Court Building. The Historical Society Gift Shop is located on the main floor of the US Supreme Court, housed in the US Supreme Court Building at 1 First St., NE, Washington, DC 20543.

## BACKGROUND

1. On or about May 1, 2017 the Plaintiff, Dr. Jan B. Hamilton, received an invitation to the 42nd Annual Meeting and Dinner of the Supreme Court Historical Society to be held June 5, 2017 at the US Supreme Court Chambers with dinner in the Great Hall.

2. She placed her reservation in writing on the card enclosed and mailed a check to the Historical Society at 224 East Capitol Street, NE Washington, DC 20003. She listed that her children were giving her the ticket for "Mother's Day" so she asked that her post dated check to be cashed after Mother's Day, May 14, 2017.

3. She did not hear from the Society and expected that her check would be cashed on the Monday May 15, 2017 after Mother's Day. However, when she personally went to 224 E. East Capitol St. on May 31, 2017, a tall young man who answered the door stated that she could not pick up her ticket, that she would be placed on a wait list.

4. She had previously mailed another check for $400.00 dated May 15, 2017 after her children gave her the "Mother's Day" gift.

3

5. On May 10, 2017 she attended the Gideon v. Wainwright lecture hosted by the US Supreme Court Historical Society at 6:00 p.m. and the reception following. While she was talking with another lesbian friend at the reception, Jennifer Lowe joined them at the table uninvited and over heard the discussion about Dr. Hamilton's Habeas Corpus petitions, denied by the US Supreme Court due to lack of exhaustion of state remedies. These petitions are still on the desk of 9th Judicial District Judge James B. Boyd in Aspen, Co. The two women discussed Gay Pride Week and the upcoming parade with LGBT heroes Grand Marshalls Edie Windsor (2013) and Jim Obergefell (2015). Jennifer Lowe overheard their discussion of the current legislation impacting LGBT rights as ruled in the 7th Circuit.

6. Thereafter, the previous friendly ambiance between Historical Society member, Jan B. Hamilton and employee Jennifer Lowe, became very different. Every encounter was laced with hostility, distain, intentional humiliation, clearly based upon bias and prejudice on the part of Jennifer Lowe who on June 5, 2017 at approximately 3:00 p.m. acted with irrational rage with physical assault and verbal abuse to Dr. Hamilton.

7. As Dr. Hamilton registered for the tour, she met Attorney Derek Farmer and his wife Sandy who offered her a ticket. Dr. Hamilton called to have her name removed from the waiting list but Jennifer Lowe stated that under no circumstances would she be allowed to accept the ticket from Derek Farmer and his wife. Mr. Brown expressed dissatisfaction with Ms. Lowe's decision and stated that Dr. Hamilton should come to the business meeting to see if there was a "no show".

8. Previously, as Dr. Hamilton sought the status of her ticket, on May 31, 2017 at the Annual Historical Society at 224 E. Capitol St., she was met with rejection and homophobia. In a voice mail from Janet Tramonte she was told that she could not attend the dinner but would be able to take the tour and listen to the lecture. Dr. Hamilton asked if she was permitted to attend the business meeting at 6:30 p.m. and was told by the registrars around noon June 5, 2017 that she could do so.

9. The tour guide, Beth Marcus was friendly and informed. The tour ended in the Chambers of the US Supreme Court at 2:00 p.m. The speaker, John F. Sexton was introduced by President Gregory P. Joseph. After the speech, Dr. Hamilton gave him a standing ovation and proceeded to get his autograph but was physically blocked and brutally

assaulted by Jennifer Lowe, Director of Programs and Strategic Planning for the Historical Society with irrational rage and melt down.

10. Other visitors were allowed to speak with Mr. Sexton but Jennifer Lowe with intent to cause bodily harm assaulted this elderly (75-years of age) disabled lesbian in violation of the 2009 Matthew Shepard Hate Crimes Act and the DC Statutes with torture, abuse, bias and prejudice to an elderly DC Citizen (see attached, Exhibit A).

11. Dr. Hamilton has a heart condition diagnosed by William Bordon, MD cardiologist at George Washington University Hospital so she immediately went home 3 blocks away and called her vascular specialist, Dr. Cynthia Tracey who ordered an ECHO to be conducted Thurs. June 22, 2017 at George Washington University Hospital. Following the assault by Jennifer Lowe, a MRI was ordered by Dr. Annette Beicher, Gyn. primary care physician.  Dr. Hamilton is bleeding vaginally and has bruises and cuts on her arms and hands. Medical reports to reveal the test results will be submitted when available.  Dr. Hamilton's father C.M. Barton, Jr. died suddenly at age 63 from a similar cardiovascular stress induced condition.

12. The reports containing pictures of bruising were submitted to the Federal Police of the US Supreme Court and accepted by Officer Amy

Smith with the attached exhibits so that an investigation for criminal assault could be conducted and documented by government authorities. (See Exhibit B).

13. Notice was sent by email to the Officers of the Historical Society and the Chair of the Board of Trustees (see Exhibit C) seeking policies and procedures applicable for such an abusive act of physical harm by an employee in a federal building. No response has been received from President Gregory Joseph or Chair of the Board of Trustees, Ralph I. Lancaster Jr. as of this filing June 21, 2017.

14. Witnesses were 2 attorneys, Derek Farmer and his wife Sandy. Other witnesses were in the proximity of the incident but Dr. Hamilton does not have their names. She has trusted the US Federal Police to use the security cameras in the Chambers of the US Supreme Court to identify other attendees who would have eye-witness testimony.

15. As of June 21, 2017, no report from Federal Police Officer Krista Giaceio (Phone: 202-479-2369) who is the current assigned detective has been provided to the victim. No return phone calls have been received from any member of the Federal Police Force for the US Supreme Court, Jeff Smith, Chief; Jeff Cooper, Officer Giaceio's supervisor, by the victim, an elderly citizen of Washington, DC.

7

16. Therefore, this complaint is now filed in good faith in a timely manner to the Federal District Court of the District of Columbia in accordance with Federal Statutes, with the pleading to prosecute this homophobic federal employee for violations of the aforementioned Constitutional Amendments 1st and 14th, and the 2009 Matthew Shepard Hate Crimes Act and 6135, Regulation 7.

## ARGUMENT

The Plaintiff alleges that the continuing refusal to enforce the 2009 Matthew Shepard Hate Crimes Act by the Judicial Branch of the US Government violates her 1st and 14th Amendment rights for freedom of religion and the right for equal protection and due process along with 6135 or Regulation 7.

A. And that this refusal is an "Obstruction of Justice" to substantially burden the exercise of her religion to believe that God loves all the same, gay and straight.
B. She further alleges that the Defendants with willful and wanton intent to cause bodily injury, violated the 2009 Matthew Shepard and James Byrd Hate Crimes Act, 18 USC 249, her 1st and 14th Amendment rights. **This currently unenforced 2009 Hate Crimes Act by the Judicial Branch of the US Government,** was passed by a majority vote of the US Legislative branch (House and Senate) of the US Government and signed by the Executive Branch, the Office of the President. The Hate Crimes Act states that:
(a)In General.—
(1)**Offenses involving actual or perceived race, color, religion, or national origin.**—Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person—

**(A)**
shall be imprisoned not more than 10 years, fined in accordance with this title, or both; and
**(B)** shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if—
**(i)**
death results from the offense; or
**(ii)**
the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill.
**(2)Offenses involving actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability.—**
**(A)In general.—**Whoever, whether or not acting under color of law, in any circumstance described in subparagraph (B) or paragraph (3), willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person—
**(i)** shall be imprisoned not more than 10 years, fined in accordance with this title, or both; and
**(ii)** shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if—
**(I)** death results from the offense; or
**(II)** the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill.
**(B) Circumstances described.—**For purposes of subparagraph (A), the circumstances described in this subparagraph are that—
**(i)** the conduct described in subparagraph (A) occurs during the course of, or as the result of, the travel of the defendant or the victim—
**(I)**
across a State line or national border; or
**(II)**
using a channel, facility, or instrumentality of interstate or foreign commerce;
**(ii)**

the defendant uses a channel, facility, or instrumentality of interstate or foreign commerce in connection with the conduct described in subparagraph (A);

**(iii)**

in connection with the conduct described in subparagraph (A), the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce; or

**(iv)** the conduct described in subparagraph (A)—

**(I)**

interferes with commercial or other economic activity in which the victim is engaged at the time of the conduct; or

**(II)**

otherwise affects interstate or foreign commerce.

**(3) Offenses occurring in the special maritime or territorial jurisdiction of the united states.—**

Whoever, within the special maritime or territorial jurisdiction of the United States, engages in conduct described in paragraph (1) or in paragraph (2)(A) (without regard to whether that conduct occurred in a circumstance described in paragraph (2)(B)) shall be subject to the same penalties as prescribed in those paragraphs.

**(4) Guidelines.—**

All prosecutions conducted by the United States under this section shall be undertaken pursuant to guidelines issued by the Attorney General, or the designee of the Attorney General, to be included in the United States Attorneys' Manual that shall establish neutral and objective criteria for determining whether a crime was committed because of the actual or perceived status of any person.

**(b) Certification Requirement.—**

**(1) In general.—** No prosecution of any offense described in this subsection may be undertaken by the United States, except under the certification in writing of the Attorney General, or a designee, that—

**(A)**

the State does not have jurisdiction;

**(B)**

the State has requested that the Federal Government assume jurisdiction;

**(C)**

the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence; or

**(D)**

a prosecution by the United States is in the public interest and necessary to secure substantial justice.

**(2)Rule of construction.—**

Nothing in this subsection shall be construed to limit the authority of Federal officers, or a Federal grand jury, to investigate possible violations of this section.

**(c)Definitions.—**In this section—

**(1)**

the term "bodily injury" has the meaning given such term in section 1365(h)(4) of this title, but does not include solely emotional or psychological harm to the victim;

**(2)**

the term "explosive or incendiary device" has the meaning given such term in section 232 of this title;

**(3)**

the term "firearm" has the meaning given such term in section 921(a) of this title;

**(4)**

the term "gender identity" means actual or perceived gender-related characteristics; and

**(5)**

the term "State" includes the District of Columbia, Puerto Rico, and any other territory or possession of the United States.

**(d)Statute of Limitations.—**

**(1)Offenses not resulting in death.—**

Except as provided in paragraph (2), no person shall be prosecuted, tried, or punished for any offense under this section unless the indictment for such offense is found, or the information for such offense is instituted, not later than 7 years after the date on which the offense was committed.

**(2)Death resulting offenses.—**

An indictment or information alleging that an offense under this section resulted in death may be found or instituted at any time without limitation.

(Added and amended Pub. L. 111–84, div. E, §§ 4707(a), 4711, Oct. 28, 2009, 123 Stat. 2838, 2842.)

C. Dr. Hamilton is under the care of vascular specialists at George Washington University Hospital with potential fatal outcomes. She passed out on June 18, 2017 on DC public property from the alleged extreme emotional distress inflicted upon her by Jennifer Lowe.

D. Dr. Hamilton is residing in the District of Columbia while her habeas corpus cases proceed to the exhaustion of state remedies. These 3 false arrest cases are being held on the desk of Sr. Judge James B. Boyd in Garfield County Court House in Glenwood Springs, Co. in defiance of CRS 13-45-101 to 114. She moved to DC when her mandated "Conversion Therapy" case (with threat of arrest if she did not comply with the mandates of individuals in her bible class in Aspen, Co.) case was docketed at the US Supreme Court. She and her lesbian lover were residents of Aspen, Co. They have shared matching engagement rings since 2006.

## EVIDENCE OF PRESIDENCE WITH UPDATE OF CURRENT RULING: 7TH CIRCUIT COURT OF APPEALS

**Huge LGBT victory: Federal court rules gay rights are civil rights, discrimination is illegal**

7th Circuit Court, Civil Rights Act, Discrimination, Homosexuality, Lgbtq, Title Vii

CHICAGO, Illinois, April 5, 2017–

1. A federal appeals court ruled Tuesday that Title VII of the 1964 Civil Rights Act, which bans discrimination on the basis of race, color, religion, sex, and national origin, also covers homosexuality.

2. The U.S. Court of Appeals for the 7th Circuit, which handles cases in Indiana, Illinois, and Wisconsin, decided 8-3 that discrimination on the basis of "sex" also means discrimination on the basis of "sexual orientation."

3. The ruling is significant because it recognizes special protections for LGBTQ status in existing law, making gay activists' attempts to create LGBTQ anti-discrimination laws unnecessary.

4. Progressives hailed the ruling. Vox called it "the biggest pro-gay rights legal decision since the Supreme Court ruled in favor of marriage equality." Lambda Legal, which handled the case, said, "This decision is game-changer."

5. "It's the first federal appeals court decision to rule that anti-gay discrimination is banned under existing federal law," Vox's David McNew reported. "What activists want to do is expand the existing civil rights protections to also protect LGBTQ people."

6. Scott Shackford of Reason.com said, "Suddenly, without passing any new laws, we have a new protected class under federal law."

7. Indeed, if the decision is allowed to stand, it would essentially add LGBTQ protections to existing laws. Discrimination on the basis of "sexual orientation" — an undefined phrase that could potentially be expanded to mean any number of sexual preferences — counts as discrimination on the basis of being male or female.

8. "This is something that will roll out coast to coast, we think," predicted attorney Greg Nevins of Lambda Legal, the nation's largest pro-gay bank of attorneys.

9. In its ruling, the appellate court explained, "It would require considerable calisthenics to remove the 'sex' from 'sexual orientation.' The effort to do so has led to confusing and contradictory results."

10. Opponents say the Civil Rights Act of 1964 meant "gender," as in male and female, when it outlawed discrimination based on "sex," and did not speak to any variant sexual practice. They argue that the court-referenced "confusing and contradictory results" have come with more recent court decisions infusing transgender issues into the law.

11. The implications are indeed far reaching for this interpretation of the word "sex" in American law.

13

12. The fact that historically the word was used by legislators and legally understood by justices to refer to male and female is not disputed. But with more than 50 separate gender identities now being infused into American business and education, gay activists say that "what the original laws' authors believed or intended is irrelevant."

13. The court admitted that its decision was based not on the intent of the 1964 Civil Rights Act but on recent U.S. Supreme Court decisions.

14. "In this case, we have been asked to take a fresh look at our position in light of developments at the Supreme Court extending over two decades," decision author Judge Diane Wood explained. "We have done so, and we conclude today that discrimination on the basis of sexual orientation is a form of sex discrimination."

14. The case focused on Title VII of the Civil Rights Act, which deals with workplace discrimination. But many courts have ruled that Title IX, which deals with schools, should be interpreted the same way.

15. In other words, if upheld by the Supreme Court, the decision would create explicit protections for homosexuals in employment, housing, and education, regardless of a business owner's, landlord's, or school's sincerely held beliefs.

16. The specific case involves a lesbian suing Ivy Tech Community College in Indiana because she was not hired by the school. Plaintiff Kimberly Hively argued her case based on the Title VII section of the 1964 Civil Rights Act. **But "sexual orientation" is not in Title VII and so lower courts all ruled against her. Now the 7th Circuit Court of Appeals, in full session, ruled in her favor, allowing her case to go forward.**

17. In justifying the ruling, Judge Wood acknowledged, "For many years, the courts of appeals of this country understood the prohibition against sex discrimination to exclude discrimination on the basis of a person's sexual orientation." This essentially admits that Title VII does not, in fact, include what we now call "sexual orientation."

18. But Wood then says the issue is unresolved because of an "absence" of a Supreme Court decision on the matter. "The Supreme Court, however, has never spoken to that question," Wood wrote.

19. Three judges dissented, including Judge Diane Sykes, who explained that the decision not only has no basis in the 1964 civil rights law but goes against legal precedent as to how that law has always been interpreted.

20. "What justification is offered for this radical change in a well-established, uniform interpretation of an important — indeed,

14

transformational — statute?" Judge Sykes asked. "My colleagues take note of the Supreme Court's 'absence from the debate.'"

21. "What debate? There is no debate," Justice Sykes pointed out. "Our long-standing interpretation of Title VII is not an outlier. From the statute's inception to the present day, the appellate courts have unanimously and repeatedly read the statute the same way, as my colleagues must and do acknowledge."

## CONCLUSION

**Therefore,** this elderly, disabled lesbian, a victim of the negligence to the level of Obstruction of Justice of the governmental authorities assigned the duty to protect the citizens of these United States hereby files this complaint alleging criminal assault by Jennifer Lowe, in the Chambers of the US Supreme Court on June 5, 2017 based upon the victims sexual orientation as a lesbian exercising her rights as a US Citizen. Please protect LGBT families, children, elderly and all who have suffered for too long. This complainant is seeking losses and damages in the amount of $250,000.00 per defendant for compensatory, punitive, exemplary losses and damages in treble for pain and suffering with extreme emotional distress that any normal person would experience under these abusive homophobic circumstances.

*"Pro se litigant's pleadings be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); see also Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir.1989). This rule means that if the court can reasonably read the pleadings to state a valid claim on which the defendant could prevail, it should do so despite the defendant's failure to cite proper legal authority, her*

*confusion of various legal theories, her poor syntax and sentence construction, or her unfamiliarity with pleading requirements.*

Respectfully submitted, Sept. 13, 2017

*Dr. Jan B. Hamilton*

Dr. Jan B. Hamilton, Plaintiff, Victim of 2009 Hate Crimes Act Violation

110 D. St. SE, #505, Washington, DC, 20003, Phone 202-774-0667, email: janbhamilton@gmail.com, website: NutritionalBiomedicine.com

## CERTIFICATE OF SERVICE

Submission for Review of Judicial Council to the
Chief Justice of the DC Federal District Court of Appeals
The Honorable, Beryl A. Howell,
333 Constitution Ave. NW, Room 1225
Washington, DC, 20001

Chief Justice of the US Supreme Court, The Honorable John Roberts
1 First St. NE
Washington, DC 20543     *President of Historical Society*
Phone: 202-479-3011      *with Jurisdiction)*
Email: jroberts@supremecourt.gov

A copy of this complaint was mailed by US Mail to the Defendants who are Officers and Trustees of the President of the US Supreme Court Historical Society, on ~~June 21, 2017~~ *previously mailed to each defendant on or about June 21, 2017* by first class US Mail.

Gregory P. Joseph, President
485 Lexington Ave, 30th Floor
New York, NY 10017
Phone: 212-407-1210
Email: gpjoseph@jha.com

Ralph I. Lancaster Jr., Chair of the Board of Trustees
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101

16

Phone: 207-791-1260  Cell 207-653-1979
Email: rlancaster@pierceatwood.com

Vincent C. Burke III, Vice President
7600 Wisconsin Ave. Suite 600
Bethesda, MD, 20814
Phone: 301-652-6880
Email:  vburke@fdalaw.com

Dorothy Tapper Goldman, Vice President
John Simon Guggenheim Memorial Foundation
90 Park Ave
New York, NY 10016
And:
339 Indian Rock Rd., New Canaan, CT. 06840

Jerome B. Libin, Vice President
Eversheds Sutherland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC
District of Columbia, USA20001-3980
Phone: +1 202-383-0145
Fax:  +1 202-637-3593
Email: jeromelibin@eversheds-sutherland.com

Chilton D. Varner, Vice President
King and Spalding, LLP
1180 Peachtree Street
Atlanta, Georgia, 30309 USA
Phone: 404-572-4789
Fax: +1 404-572-5100
Email cvarner@kslaw.com

Phillip J. Kessler, Secretary
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Phone: 313.465.7000
Phone: 313.465.7630
Fax: 313.465.7631

Email: pkessler@honigman.com

Robert E. Juceam, General Counsel
One New York Plaza
New York, New York 10004
Phone: +1.212.859.8040
Fax: +1.212.859.4000
Tel: +1.212.859.8000
robert.juceam@friedfrank.com

Donald B. Ayer, Chair, Publications Committee
Duke University School of Law
210 Science Dr. Room 4014
Box 90360
Durham, NC 27708-0360
Assistant: Allison Rackley
Email: dbayer@jonesday.com
Phone: 919-613-7200

Robert J. Giuffra. Jr., Chair Development Committee
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004-2498
United States
Phone: +1-212-558-3121
Fax: +1-212-558-3588
Email: giuffrar@sullcrom.com

Kenneth S. Geller, Chair, Programs Committee
1999 K Street, NW
Washington, DC 20006-1101
Phone: +1202-263-3225 and 202-263-3000
Fax: 202-263-5225 and 202-263-3300
Email: kgeller@mayerbrown.com

Frank B. Gilbert, Chair, Facilities Committee
C/O President, Gregory P. Joseph
US Supreme Court Historical Society
485 Lexington Ave, 30 Floor

New York, NY 10017

Robert J Anello, At Large Member Executive Committee
Morvillo Abrahamowitz, Granslason & Anello, PC
565 Fifth Avenue
New York, New York 10017
Phone: 212-880-9520
Fax: +1-212-856-9494
Email: ranello@maglaw.com

James W. Morris, III, At Large Member Executive Committee
Morris and Morris
11 South 12th Street, 5th Floor
Richmond, VA 23218
Phone:(804) 335-0294
Phone:(804) 344-8300

John M. Nannes, At Large Member Executive Committee

Skadden, Arps, Slate, Meagher & Flom, LLP & Affiliates

1440 New York Avenue NW

Washington, DC, District of Columbia, USA

20005-2111

Tel: +1 202 371 7500

Fax: 202 393 5760

Email: John.Nannes@skadden.com

Charles J. Cooper, At Large Member Executive Committee
Partner |
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Phone: (202) 220-9660 |

Fax: (202) 220-9601

Email: ccooper@cooperkirk.com


Teri P. McClure, At Large Member Executive Committee

Chief Human Resources Officer and Senior Vice President Human Resources, Labor and Employee Communications, UPS.

Greater Atlanta Area

C/O Gregory P. Joseph, President

485 Lexington Ave, 30th Floor
New York, NY 10017


The Honorable Theodore B. Olson, At Large Member Executive Committee

Gibson Dunn

Washington, D.C. Office

1050 Connecticut Avenue, N.W.

Washington, DC 20036-5306, USA

Email: tolson@gibsondunn.com

T: +1 202.955.8668

F: +1 202.530.9575

*mailed to defendants*

These complaints were mailed to the listed Defendants on June 21, 2017, by first class US Mail as declared by Plaintiff, Jan B. Hamilton, 110 D. St. SE #505, Washington, DC 20003. Phone 202-774-0667, email: janbhamilton@gmail.com, website: NutritionalBiomedicine.com

*Jan B. Hamilton* Jan B. Hamilton   Date: ~~June 27, 2017~~ Sept. 23, 2017

20